**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DANIEL L. BRADFORD,**

      **Plaintiff,**　　　　　　**CIVIL ACTION NO. 16-cv-12214**

  **v.**　　　　　　　　　　　　　　**DISTRICT JUDGE TERRENCE G. BERG**

**CAREN ALBERCOOK** *et al.***,**　　　　**MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendants.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Daniel L. Bradford, proceeding *pro se*, initiated this prisoner civil rights action on June 15, 2016, pursuant to 42 U.S.C. § 1983, alleging that Defendants Caren Albercook, M.D. and Michigan Department of Corrections (MDOC) Health Unit Manager (HUM) Connie Ives, Corrections Officer James Richardson,[1] and Resident Unit Manager (RUM) Eric Walton denied him adequate medical care in violation of his Eighth Amendment rights. (Docket no. 1.) Before the Court are two Motions for Summary Judgment – one filed by Defendants Ives, Richardson, and Walton (hereinafter referred to as "the MDOC Defendants") (docket no. 34) and the other filed by Defendant Albercook (docket no. 35). Plaintiff filed an untimely Response to the MDOC Defendants' Motion (docket no. 39) along with a document titled "Statement of Facts," to which Plaintiff attached several grievances related to his claims in this matter (docket no. 40).[2] Plaintiff also filed an untimely Response to Defendant Albercook's Motion, to which Defendant Albercook replied, and Plaintiff filed a Sur-Reply, albeit without leave of court. (Docket nos. 45,

---

[1] Plaintiff named "J. Richardson" as a defendant in the Complaint, who has since been identified as James Richardson. (*See* docket nos. 1, 15.)
[2] The above-cited versions of Plaintiff's Response and Statement of Facts are not signed; however, Plaintiff filed signed copies of these documents a day later. (Docket nos. 43, 44.)

46, 48.) Accordingly, Defendant Albercook has filed a Motion to Strike Plaintiff's Unauthorized Sur-Reply, which is also pending before the court along with the parties' responsive briefing thereto, and it will be addressed in an order issued contemporaneously with this Report and Recommendation. (Docket nos. 49, 50, 51.) This action has been referred to the undersigned for all pretrial purposes. (Docket no. 18.) The undersigned has reviewed the pleadings, dispenses with oral argument on the Motions pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons that follow, it is recommended that Defendants' Motions for Summary Judgment (docket nos. 34, 35) be **GRANTED** and that Plaintiff's Complaint be dismissed in its entirety.

## II. REPORT

### A. Background

Plaintiff has been discharged from MDOC custody, however, the events giving rise to this action occurred shortly after his August 2, 2015 transfer from the Pugsley Correctional Facility (MPF), in Kingsley, Michigan, to the Parnall Correctional Facility (SMT), in Jackson, Michigan. (*See* docket no. 40 at 1; Mich. Dep't of Corr. Offender Tracking Info. Sys. (OTIS)[3].) Plaintiff was apparently issued a Special Accommodations Notice (SAN) while incarcerated at MPF in 2012, which allowed him to receive "early chow" as treatment for his gastroesophageal reflux disease (GERD). (*See* docket no. 23 at 2; docket no. 34 at 26.) Plaintiff brought the SAN with him when he was transferred to SMT; however, on September 17, 2015, Defendant Richardson allegedly took Plaintiff's SAN to determine whether he needed to honor it, and then

---

[3] The court is permitted to take judicial notice of the information contained on OTIS. *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821 n.3 (E.D. Mich. 2004).

2

he destroyed it. (Docket no. 23 at 2.) This left Plaintiff with no SAN to carry on his person. (*Id.*) On September 21, 2015, Defendant Richardson allegedly refused to let Plaintiff out of his cell for early chow in accordance with the SAN. (*Id.*) Plaintiff was then seen by RN Trupiano on September 23, 2015, to have his SAN replaced, for which he was charged a $5.00 copay. (*Id.*) Plaintiff alleges that Defendant Richardson's actions violated MDOC policy and caused him undue physical and financial harm. (*Id.*)

Subsequently, on September 28, 2015, Defendant Walton interviewed Plaintiff regarding one of Plaintiff's grievances, took Plaintiff's new SAN, and returned to his office. (Docket no. 23 at 2.) According to Plaintiff, Defendant Walton later returned to Plaintiff's cell and informed Plaintiff that Defendant Richardson would not be honoring the SAN. (*Id.*) Plaintiff alleges that by taking it upon himself to make medical decisions about Plaintiff's medical needs, Defendant Walton violated MDOC policy and the Eighth Amendment. (*Id.*)

On October 7, 2015, Plaintiff spoke to Sergeant Josling regarding the fact that his SAN was not being honored by the staff on 10 Block while Defendant Richardson was working. (Docket no. 23 at 2.) Plaintiff alleges that Sergeant Josling then spoke with Defendant Walton to ask why the SAN was not being honored, and Defendant Walton sent Plaintiff to see Defendant Ives. (*Id.*) According to Plaintiff, Defendant Ives told him that "Custody" did not allow an accommodation for early chow for the treatment of GERD. (*Id.*) Plaintiff alleges that neither Defendant Walton nor Defendant Ives had a valid security or medical reason to terminate treatment for Plaintiff's medical needs. (*Id.*)

Plaintiff further alleges that Defendant Albercook terminated Plaintiff's SAN on October 7, 2015, without examining him, on the basis that SMT did not allow early chow for the diagnosis of GERD. (Docket no. 23 at 2.) Plaintiff claims that Defendants' actions led to him

being prescribed multiple doses of Protonix, Ranitidine, and Tums to control his GERD, which treatment did not work, and which ultimately led to him developing dysphagia of the esophagus and a hiatal hernia. (*Id.*) Plaintiff asserts that he therefore suffers from "difficulty swallowing and choking, loss of sleep due to chest pains and excessive gas build up and partial[] digestion of food that continues to this day." (*Id.*)

As the MDOC Defendants point out, Plaintiff's Amended Complaint fails to state the capacity in which he sues Defendants or the relief he seeks. (*See* docket no. 34 at 9; *see* docket no. 23.)

### B.    Governing Law

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket nos. 34, 35.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.  Analysis**

*1.  The MDOC Defendants' Motion for Summary Judgment [34]*

The MDOC Defendants argue that they are entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act; (2) Plaintiff failed to make a clear showing that Defendants Walton and Ives were personally involved in the activity that forms the basis of his Amended Complaint; (3) Plaintiff's claims do not rise to the level of an Eighth Amendment violation; and (4) they are entitled to qualified immunity.  (Docket no. 34.)

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.  Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural

5

rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[4] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). A grievance must include information regarding the facts of the issue being grieved (i.e., who, what, when, where, why, how), and the dates, times, places, and names of the individuals involved. MDOC Policy Directive 03.02.130(R). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy. MDOC Policy Directive 03.02.130(B).

It is not the prisoner's burden to plead or prove that he has successfully exhausted his administrative remedies in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense, *Jones*, 549 U.S. at 216, and

---

[4] The MDOC Defendants attached a copy of MDOC Policy Directive 03.02.130 to their Motion. (Docket no. 34-2.)

so Defendants carry the burden of proof on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

In the Amended Complaint, Plaintiff asserts that he filed grievances against Defendants regarding each of their allegedly unconstitutional actions, and he specifically notes the date that he mailed the Step III appeals of those grievances via the United States Postal Service. (Docket no. 23 at 2.) As noted above, Plaintiff attached copies of most of those grievances to a "Statement of Facts" that he filed with his Response to the instant Motion. (Docket no. 40 at 4-23, 28-32.) And each of the relevant Step III grievance appeal forms attached thereto contain a small notation in what appears to be Plaintiff's handwriting regarding the date it was sent via regular mail, which dates correspond with the dates in the Amended Complaint. (*Id.* at 7, 12, 17, 22, 31.)

Defendants argue that Plaintiff has not exhausted his administrative remedies because he did not properly complete the grievance process regarding the claims raised in the Amended Complaint. (Docket no. 34 at 14-17.) In support of this argument, the MDOC Defendants submitted a certified copy of Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued through Step III of the grievance process between May 2009

7

and August 12, 2016, along with the underlying documentation for those grievances. (Docket no. 34-3.) Defendants correctly point out that of the five grievances exhausted by Plaintiff as reflected on the report, two of the grievances were completed/resolved after Plaintiff initiated this action, and the other three grievances do not relate to Plaintiff's claims in this matter. (Docket no. 34 at 15-17; *see* docket no. 34-3.) Indeed, the grievances that Plaintiff filed against Defendants regarding his claims in this matter are not listed on Plaintiff's Step III Grievance Report. Accordingly, the MDOC Defendants have carried their initial summary judgment burden of demonstrating that Plaintiff failed to exhaust his administrative remedies.

In response to Defendants' Motion, Plaintiff maintains that he attempted to resolve all issues by filing grievances at Step I, II, and III of the grievance process, and he asserts that all grievances were placed in the cellblock mailbox with correct postage and properly sealed. (Docket no. 39 at 1.) Plaintiff further asserts that he did not receive responses to the six Step III grievance appeals that he filed against Defendants. (*Id*.; docket no. 40 at 2.)

Where, as here, the MDOC Defendants have met their initial summary judgment burden of demonstrating that Plaintiff failed to appeal his grievances against Defendants to Step III of the grievance process, Plaintiff's unsupported assertions to the contrary are insufficient. *See Aug. v. Caruso*, No. 12-13775, 2013 WL 5291577, at *5 (E.D. Mich. Sept. 19, 2013), *report and recommendation adopted*, No. 2:12-cv-13775, 2013 WL 6816472 (E.D. Mich. Dec. 24, 2013). Rather, Plaintiff was required to produce "affirmative contrary evidence establishing the existence of a material question of fact on the exhaustion issue," that is, "some proper evidence that [he] had, in fact, filed and appealed the relevant grievances through all three steps of the Policy's grievance process." *Id*. (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (party opposing a

8

motion for summary judgment "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion.") (citation and internal quotation marks omitted)).

Here, all that Plaintiff has presented are his unsupported assertions in the Amended Complaint and the Response, and his handwritten notations on the Step III appeal forms. Plaintiff has not provided an affidavit supporting his assertions; any corroborating evidence that the Step III appeal forms were actually mailed in accordance with MDOC policy; or any evidence that the MDOC received his Step III grievance appeals. "In similar situations, courts have held that this lack of evidence compels a finding that the grievances at issue were unexhausted." *Aug. v. Caruso*, 2013 WL 5291577, at *5 (finding grievances unexhausted despite the plaintiff's notations on the Step III grievance appeal forms that the appeals were "timely filed," where grievances were not listed in the Step III grievance report, and the plaintiff produced no evidence that the appeals were mailed or received, or that she received responses thereto) (citing *Davis v. Caruso,* No. 07-CV-11740, 2008 WL 4561659, at *6-7 (E.D. Mich. Oct. 10, 2008), *report and recommendation adopted in relevant part*, No. 07-CV-11740, 2009 WL 878193, at *9-10 (Mar. 30, 2009) (finding grievance unexhausted where plaintiff produced completed Step III appeal form but had no evidence demonstrating that he ever sent that form to Lansing or received a response, and the grievance was absent from the Step III tracking database); *Dean v. Prison Health Servs.,* No. 10-14135, 2011 WL 1630114, at *6-7 (E.D. Mich. Mar. 28, 2011) (finding grievance unexhausted where Step III grievance report did not list grievance, despite the fact that plaintiff produced a letter from the Ombudsman's office, which may be contacted if the grievant finds a Step III response unsatisfactory); *Hembree v. Carter,* No. 12-cv-13036, 2013 WL 3946062, at *4 (E.D. Mich. July 31, 2013) (finding grievance

unexhausted despite plaintiff's assertion that he filed a Step III appeal where the grievance was not listed in the Step III grievance report)). Accordingly, Plaintiff has failed to show that he exhausted his grievances against Defendants.

The evidence submitted by Defendants establishes, in a manner in which no reasonable jury could disbelieve it, that Plaintiff did not properly exhaust his administrative remedies before filing this lawsuit in accordance with MDOC Policy Directive 03.02.130. Defendants have satisfied their burden on the issue of exhaustion, and Plaintiff has not provided any affirmative evidence to the contrary. Accordingly, there is no genuine dispute of material fact that Plaintiff did not exhaust his administrative remedies, and the MDOC Defendants' Motion for Summary Judgment (docket no. 34) should be granted.[5]

### 2. *Defendant Albercook's Motion for Summary Judgment [35]*

Defendant Albercook argues that she is entitled to summary judgment because Plaintiff's Eighth Amendment claim against her fails as a matter of law. (Docket no. 35.) To establish a cognizable claim for a violation of the Eighth Amendment under a theory of deliberate indifference to a serious medical need, an inmate must show that he suffered from a serious medical need and the official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis and citations omitted). An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

---

[5] Because the MDOC Defendants are entitled to summary judgment on the basis of exhaustion, the Court need not reach their alternative arguments for summary judgment.

"In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Hill v. Haviland*, 68 F. App'x 603, 604 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).  Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law."  *Westlake*, 537 F.2d at 860 n.5.  Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures.  *See Westlake*, 537 F.2d at 860.  "[W]hether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  *Estelle*, 429 U.S. at 107.  A decision to not administer a certain form of medical treatment does not represent cruel and unusual punishment. *Id*.

The Court will accept for purposes of Defendant Albercook's Motion that Plaintiff's GERD constitutes a serious medical need.  However, Plaintiff has not established that Defendant Albercook knew of and disregarded an excessive risk to Plaintiff's health.  Plaintiff claims that Defendant Albercook's termination of his SAN for early chow violated the Eighth Amendment and led to the receipt of inadequate treatment for his GERD, which caused adverse side effects and resulted in the worsening of his condition.  (Docket no. 23 at 2.)  But the record shows, and Plaintiff admits in his Amended Complaint, deposition testimony, and Response to Defendant's

Motion, that he received several other forms of medical treatment for his GERD from Defendant Albercook and other medical providers at SMT. (*See* docket nos. 23, 35-1, 35-2, 37.) Specifically, Plaintiff's treatment included over-the-counter and prescription medications; extra pillows to elevate Plaintiff's torso; alternative diets, *e.g.*, a soft mechanical diet and a pureed diet; and diagnostic tests and procedures. (*See id.*) Indeed, this is not a case where Plaintiff received no treatment at all.

Plaintiff's claim inherently sounds in disagreement with Defendant Albercook's decision to terminate the SAN for early chow and pursue other courses of treatment for Plaintiff's GERD. Essentially, Plaintiff disagrees with Defendant Albercook's medical judgment. But a disagreement over treatment does not give rise to a constitutional violation. Plaintiff's allegation against Defendant Albercook, at most, represents an allegation of mere negligence, which is simply not sufficient to allow Plaintiff's claim to proceed as a constitutional violation for deliberate indifference. *See Jerauld ex rel. Robinson v. Carl*, 405 F. App'x 970, 976 (6th Cir. 2010) (citation omitted) ("Deliberate indifference requires a degree of culpability greater than mere negligence."). Defendant Albercook's Motion for Summary Judgment (docket no. 35) should therefore be granted.[6][7]

---

[6] In his Sur-Reply brief, Plaintiff asserts that he has requested his medical records from the MDOC to support his claims against Defendants, but his requests have been obstructed. Plaintiff asks that this fact be used to deny Defendant Albercook's Motion for Summary Judgment. (Docket no. 48 at 1.) However, as Defendant Albercook points out in her Reply brief in support of her Motion to Strike Plaintiff's Sur-Reply, she provided Plaintiff with copies of all of the medical records on which she relied to support her Motion for Summary Judgment. (*See* docket no. 51 at 2.) Moreover, in light of the undisputed evidence, no amount of additional discovery will change the nature of Plaintiff's claims or the fact that Plaintiff's claims do not rise to the level of a constitutional violation. Accordingly, Plaintiff's assertion regarding his medical records does not warrant the denial of Defendant Albercook's Motion for Summary Judgment.

[7] Because the undersigned has considered Plaintiff's Sur-Reply in recommending that Defendant Albercook's Motion for Summary Judgment be granted, Defendant Albercook's Motion to Strike Plaintiff's Unauthorized Sur-Reply Brief (docket no. 49) will be denied via a text-only order issued contemporaneously with this Report and Recommendation.

### D. Conclusion

For the reasons stated herein, it is recommended that the court **GRANT** Defendants' Motions for Summary Judgment (docket nos. 34, 35) and that this matter be dismissed in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 31, 2018	s/ Mona K. Majzoub
	MONA K. MAJZOUB
	UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: July 31, 2018	s/ Leanne Hosking
	Case Manager